## Barclay *vs* Dupuy,

APPEAL FROM THE WOODFORD CIRCUIT.

*Will. Specific performance. Vendor. Vendee.*

JUDGE MARSHALL delivered the opinion of the Court.

IN the early part of the year 1838, Joel M. Dupuy departed this life without children and possessed of a large estate, the whole of which, after payment of debts and specific legacies, he devised, by his will made shortly before his death, to his wife, by the following clause ; "My will is, that all the balance of my estate, real, personal and mixed, belong to my beloved wife, Lucy H. Dupuy, during her natural life, and that she have the privilege of going on to make and complete the improvements where we now live, according to my known designs and arrangements ; and should she decline so doing, and wish to sell the place, she is authorized so to do, and any servants she may think proper, by her giving security for the proceeds thereof being distributed to my heirs after her death, as hereafter named." By the succeeding clause, the testator devises that after the death of his wife, one half of his estate, deducting $2,000 specifically bequeathed before, shall be equally divided between the heirs or legatees of his father, and that the balance shall descend to the heirs of his wife. By a previous clause, he had bequeathed $6,000 to be divided among the legatees of his father, with the distinct understanding that they should not inherit any part of his estate until they guarantied every species of property which he received from his father's estate, as being part of his (testator's) estate, and on their failure to do so, his will is, that said amount shall descend to his wife and her heirs, she being responsible for all sales made or to be made by him ; and by the remaining clause, he provides that if his wife should die before him, and he should not make another will, what he has given to her, shall descend in the same manner as if he had died first. And she and another are named as executors.

In July, 1841, Lucy H. Dupuy, after having completed the dwelling house, and several other improvements which were in progress, or immediately contemplated at the date of the will, and at the time of the testator's death, made a contract with Barclay for the sale of the farm referred to in the will, consisting of about 263 or 4 acres, at the price of $80 per acre. And Barclay, after making various payments, and receiving the possession, having refused to accept a deed and execute a note for payment of the residue of the purchase, as provided for in the contract, Mrs. Dupuy filed this bill, accompanied by a copy of a bond executed as required by the will, and prays for a specific execution of the contract, which was decreed by the Circuit Court.

In revising that decree, the only question is, whether the vendor has such title or power under the will, as authorized her to sell the farm, after having proceeded with the improvements as above stated. On the one side, it is contended, that the power of sale given to the wife, is dependent on her declining to go on to make and complete the improvements ; that she could not go on with the improvements and retain the power of sale, and that as she did not decline to go on, but did in fact go on with the improvements, completing such as were commenced, and making others, she was bound by her election, not to sell, and has lost the power. It is contended on the other side, that the testator intended to give to his wife full discretion as to the improvements, and to secure her from responsibility for not proceeding, as well as for proceeding with them ; and that he intended also to give her full power to sell or not to sell, at her discretion, and with no other regard to the condition of the improvements than she herself might entertain, subject only to the condition of giving the security required for the dis tribution of the proceeds at her death. In support of this conclusion, it is suggested that by filling up the elipsis in the sentence, the intention to give a discretion to sell, independently of the discretion as to the improvements, will be manifested by the most literal interpretation of the language, and that the will should, according to this suggestion be read thus : "And should she decline doing

BARCLAY
vs
DUPUY.

In the construction of wills, it is not proper to interpolate or supply an elipsis unless it be rendered necessary in consequence of an apparent inconsistency with the context, or unless there be something in the sentence to show that there is an elipsis which may be supplied by the insertion of words found elsewhere in the sentence.

so, she is authorized so to do, and should she wish to sell the place, she is authorized so to do," &c. The sentence admits of these interpolations, without violating any rule of construction. But as the sentence is intelligible, and may be complete without them, it would be dangerous to resort to them as a means of changing the sense to be deduced from the words as they stand in the will, unless that sense be inconsistent with the context, or unless there be something in the particular sentence to show that there is an elipsis which may be properly supplied by the insertion of words found elsewhere in the sentence. The comma which intervenes between the words "should she decline to do so," and the words "and wish to sell," &c. may serve in some degree to show that these two clauses and their subjects were intended to be separated, and that there is an elipsis at that point, which if there be one, is properly supplied by the words "she is authorized so to do." But we should be unwilling to rest the determination of the present question on a circumstance so slight and perhaps in itself equivocal.

Other considerations, however, are relied on as showing that the power of sale was intended to be discretionary, and independent of any condition but that of giving the security for the proceeds; and it is not unimportant to show that the sentence conferring the power is susceptible of a construction entirely consistent with this conclusion. It is obvious from the whole tenor of the will, that the testator's wife is the chief object of his bounty, as well as of his confidence and affection. It is from affection for her, that after giving her nearly the whole of his estate during her life, he diverts one half of it, and on a certain contingency, the whole after her death, from his heirs to hers. It is from a solicitude for her comfort that he gives her the privilege of going on with the improvements, &c. by which she is made exempt from all responsibility for doing so. And even if it might be implied from the grant of this privilege, that she might with equal immunity, abstain from going on with them, or stop short, at her pleasure, it is certainly no strained inference to say, that as at the date of his will it may have seemed probable that some of the most important im-

The wife was authorized by the will, "to go on and complete the improvements (a dwelling house, &c.) according to my known designs and arrangements, and should she decline doing so, and wish to sell the place, she is authorized to do so, and any servant she may think proper," &c. This clause construed "to give the wife authority to complete the improvements and *then* to sell.

provements, even the house which he was erecting on a large and expensive scale, might be left at his death in an unfinished and exposed condition, he may have been prompted by that solicitude for the welfare of his wife, which is so manifest in the will, to place beyond question her right of going on or declining to go on with the improvements, and her freedom from accountability in either alternative; and therefore may have intended in this clause to authorize her expressly to decline going on. But unless the words "she is authorized so to do," be understood as referring separately to the clause "should she decline so doing," as well as to the subsequent clause, there is no express authority to decline going on with the improvements, merely with a view to her own comfort and convenience, but only an implied authority to decline the improvements with a view to a sale, and if she should wish to sell; such a limitation upon the privilege of discontinuing the improvements would be without motive, and contrary to the obvious spirit and intent of the will. And if the testator intended by this clause, to authorize the discontinuance of the improvements, he intended to authorize it at the pleasure and discretion of his wife, to be exercised with a view to her own convenience and comfort, and not on the condition of her selling or wishing to sell. If the authority expressed is to be applied separately to each of the two clauses, one relating to the wife's declining to go on with the improvements, and the other to her wishing to sell, then the two powers are obviously disconnected, and wholly independent of each other. And as we are satisfied that the testator intended to give his wife a plenary discretion with regard to the improvements referred to, we should feel bound to construe the sentence now under consideration, so as to give express authority on that subject, and so as to give a discretionary and independent power of sale, unless it could be assumed, as it cannot be with certainty, that the testator understood that in conferring the privilege of going on with the improvements, in the previous clause, he was securing to his wife a full discretion on that subject, and a consequent freedom from responsibility.

But suppose the testator to have understood the first clause conferring the privilege, as giving plenary discretion and securing perfect immunity from blame or question and as thus ensuring his wife from annoyance on that subject; that he had no motive, therefore, for giving any further authority with regard to the improvements, and that the subsequent clause was intended only for the purpose of authorizing his wife to sell; the question arises, is the power therein conferred absolute, and to be exercised at the discretion of the wife, or is it conditional? And if conditional, upon what condition does it depend? We lay out of view the requisition of security, since that is plain. As the restricted form in which the question is now stated, is based upon the assumption that the testator understood plenary power to have been granted with regard to the improvements, the clause now in question should be construed with reference to the same basis, and should be understood in its reference to that subject, as recognizing this plenary power, and therefore, as meaning, that if the wife should, at any time, decline, &c. and wish to sell, &c. she is authorized to sell, &c. Taking the sentence as it stands, with this interpretation of the first clause, it is admitted that according to the words the power of sale would seem to be alike dependant upon the wife's declining to go on with the improvements and her wishing to sell. But it is evident that an actual sale must be preceded by a wish to sell, and must be attended, also, by a discontinuance of any further improvements by the wife, of the land sold. And are not these two facts referred to rather as facts which, in the nature of the thing, would and must co-exist in case of a sale, than as restrictions upon the power itself? And do they not leave it still discretionary? The two facts of stopping the improvements or declining to complete them to the extent authorized by the will, and of wishing to sell, must co-exist at the time of the sale, but they are not required to have been coeval in their origin. The wife might discontinue the improvements while she had no thought of selling, and might yet sell upon her wishing to do so afterwards; or she might continue the improvements after she entertained the wish and determination to sell, and

might continue them for the very purpose of making an advantageous sale, or in the uncertainty of selling, and yet afterwards she might sell, discontinuing of course, as she would do on selling, the further prosecution of the improvements; and so long as any of the improvements authorized by the will remained to be made or completed, this would be within the letter of the will.

Conceding then, that the testator contemplated that a sale, if made at all, would be made before the improvements referred to should be all completed, and that in giving the power of sale, he uses language implying that it is to be exercised before the improvements are all completed; still as there is no restriction as to the time of selling or of completing the improvements or as to prosecuting or discontinuing them, but as to all these points, the wife has full discretion; as the sale or the determination to sell, is not made to depend upon any consideration of advantage to those who are to take the estate in remainder, but is to rest not even upon the judgment of the wife as to their interest, but merely upon her own *wish* to be prompted by her own sense of duty, or convenience, or interest; and as, therefore, the power of sale is manifestly given with an exclusive view to her comfort, and accommodation, and advantage, and any interest which those in remainder might have in the question of sale or no sale, is made dependent on her wish, we cannot conceive any adequate motive for restricting the power with reference merely to the state of the improvements as being completed or not.

It is said, indeed, that as a man of experience, the testator knew that expenditures in extensive improvements, would never be repaid by a sale of the land, and therefore, that it may be presumed that he intended that if the improvements authorized by his will were made, the land should not be sold, and that he intended to require his wife to make her election at once, either to make the improvements and keep the land, or to discontinue the improvements if she chose to sell the land. But for whose benefit was the privilege of going on to make and complete the improvements, &c. allowed? For whose benefit was the power of sale granted? And who was ex-

BARCLAY
vs
DUPUY.

pected or intended to reap any advantage from prohibiting a sale during the life of the wife, if she should complete the improvements? Did the experience of the testator teach him that there would be a greater probability of getting compensation for the improvements by a sale at the death of his wife, when they might become dilapida-, ted, and when a sale would be necessary for the purpose of division among the numerous collateral heirs of him-self and wife, than by a sale to be made by her at any time after completing the improvements, when they might be new and in good order? And was it for this expected advantage to be gained by postponing the sale of the land, that the testator who leaves nearly his whole estate to his wife for life, using the emphatic terms, that it shall be-long to her, who gives to her heirs one half of it after her death, allows her the privilege of continuing or discon-tinuing his intended improvements on his farm, and sub-mits to her mere wish, the question of selling or not sel-ling it, can be supposed to have intended that if she pro-ceeded with the improvements after his death, or if she completed them, she should retain the land, and should either live on it to her own discomfort and against her in-clination, or rent it out to the probable injury of the im-provements and disadvantage of those in remainder? We refer to the will and to what has already been said, for a negative answer to this question.

That a construc-tion insisted up-on is repugnant to the general tenor of the will a sufficient rea-son for rejecting it.

Understanding the will as even according to its letter, allowing a sale though the wife may have proceeded, to some extent, in making and completing the improve-ments, we cannot suppose that the testator either deemed it material or intended to make it a material point in his will, that the sale, if made at all, should be made before and not after the improvements should be completed. And if it be the necessary consequence of supposing that the sentence now under particular discussion, was in-tended to confer a power of sale only, and not to give ex-press authority to discontinue the improvements, that the declining to go on with the improvements is a condition of the right of sale, so that after the improvements were completed, the power of sale was necessarily at an end,

we should regard this consequence so repugnant to the general tenor of the will and the motives and objects of the testator therein disclosed, as a sufficient ground for rejecting the construction which leads to it, and adopting that construction which, supplying the elipsis after the words "should she decline doing so," gives an express authority to discontinue the improvements and leaves the authority to sell dependent upon no other condition but the wish of Mrs. Dupuy.

It was forcibly urged in support of Mrs. Dupuy's right to sell when she did, that to whatever condition the power of selling the land was subjected, the power of selling the slaves was subject to the same restriction, and that there seems to be no connection between the alledged condition and the sale of a slave. It was also argued, and with more conclusive effect, that from its very nature, the fact which constitutes the alledged condition, refers itself so entirely to the knowledge and will of the depository of the power, that even if it be in form a condition, it is such a one as cannot be enforced, and therefore, leaves the power in fact, unfettered. For to whom but the wife were the designs and arrangements of the testator, for the improvement of his farm known? Who could question her right to make any improvements which she might in fact make, under the allegation that they were according to his designs and arrangements? Or who could say in opposition to her allegation, that she had completed all which she was authorized to make? She says in answer to the cross bill of Barclay, that there were, besides the improvements which she had made and completed, others of a large and expensive character, which she had not commenced. And even if there were no testimony supporting this allegation, it would be extremely difficult if not impossible to disprove it.

But without enlarging farther upon this point, we are of opinion that upon the face of the will the power of Mrs. Dupuy to sell the farm, was not intended to be subjected to the condition insisted on ; that it was in fact, unrestricted except with respect to giving security for the proceeds ; and that she had a perfect right to make the

sale to Barclay, and is authorized to convey the title to him.

Wherefore, the decree is affirmed.

*Morehead & Reed* for appellant: *Woolley* for appellee.

